# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD ALLEN WIMBERLEY,<br><br>　　　　　Petitioner,<br><br>　v.<br><br>JAMES YATES,<br><br>　　　　　Respondent.<br>_____ / | CV F   07-00648 LJO DLB HC<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS<br><br>[Doc. 1] |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

RELEVANT HISTORY[1]

Following jury trial in the Superior Court of the State of California, County of Stanislaus, Petitioner was convicted of first degree burglary (Cal. Penal Code[2] § 459(a)(2)), assault with a firearm (§245(a)(2)), making criminal threats (§ 422), and numerous enhancements (§§ 667(a) and (d), 667.5(b), 12022.5(a)). (Lodged Doc. No. 4, at 2.)

Petitioner filed a notice of appeal. On November 29, 2005, the California Court of Appeal, Fifth Appellate District, affirmed Petitioner's conviction. (Lodged Doc. No. 4.)

On December 14, 2005, Petitioner filed a petition for review in the California Supreme

---

[1] This information is derived from the petition for writ of habeas corpus, Respondent's answer, and Petitioner's traverse.

[2] All further statutory references are to the California Penal Code, unless otherwise indicated.

1

Court. (Lodged Doc. No. 5.) The petition was denied on February 1, 2006. (Lodged Doc. No. 6.)

On March 13, 2006, Petitioner filed a petition for writ of habeas corpus in this Court (case number 1:06-CV-00279 OWW LJO HC). On August 28, 2006, the petition was dismissed for failure to exhaust state court remedies.

On September 13, 2006, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, Fifth Appellate District. (Lodged Doc. No. 7.) The petition was denied on September 21, 2006. (Lodged Doc. No. 8.)

On October 11, 2006, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. (Lodged Doc. No. 9.) The petition was denied on April 11, 2007. (Lodged Doc. No. 10.)

Petitioner filed the instant petition for writ of habeas corpus on April 30, 2007. (Court Doc. 1.) Respondent filed an answer to the petition on September 12, 2007, and Petitioner filed a traverse on September 26, 2007. (Court Docs. 11, 15.)

## STATEMENT OF FACTS[3]

> [Petitioner] dated Brittany Barry for about a year and a half before they broke up in August 2003. [Petitioner] and Barry were the parents of two-year-old Elijah. By June 2004, Barry had been living with her new boyfriend, Lafayette Mims, for about six months. According to Barry, [Petitioner] wanted her back and kept calling the home because he was not happy that she and Elijah were living with Mims.
>
> Around 10:00 a.m. on June 21, 2004, Barry, Mims, and Elijah were at their apartment when Mims answered a telephone call from [Petitioner]. Mims told [Petitioner] that Barry was not awake and hung up. Within 30 second, [Petitioner] knocked down the locked front door with a single kick. [Petitioner] stepped in the apartment and pulled out what looked like a present wrapped in "Dora the Explorer" children's wrapping paper. [Petitioner] pulled back the paper and revealed a shotgun pointed directly at Mims, Barry, and Elijah. [Petitioner] told Mims, "'I'm going to take you all out.'" Mims got on his knees, gestured a cross with his hand, and closed his eyes. [Petitioner] was gone by the time Mims opened his eyes. Mims ran out to the patio and saw [Petitioner] look up at him and then heard a gunshot.

---

[3] The following summary of facts are taken from the opinion of the California Court of Appeal, Fifth Appellate District, lodged as Document No. 5, in support of the Answer to the Petition for Writ of Habeas Corpus. The Court finds the state Court of Appeal's summary is a correct and fair summary of the facts of the case.

   Sean Castro lived in the same apartment building and also heard a gunshot that morning. He stepped outside and saw an African-American male running with a shotgun partially covered in wrapping paper. Castro was unsure whether [Petitioner] was the person he saw.

   Barry's mother, Carrie Sohl, had met [Petitioner] six or seven times over the previous four years. After first going to her daughter's apartment right after the incident to make sure everyone was alright, she returned to her home and received a telephone call from [Petitioner] around 1:30 p.m. [Petitioner] was laughing about what happened and said Mims was "crying like a little bitch." He also told Sohl that Barry and Mims "were not going to have kids together and that he was going to take them out." An hour or two later, [Petitioner] again called Sohl and told her to get Elijah "before he went back to finish the job." He called later that day and told Sohl "that everyone would be dead before he was done." Sohl's boyfriend also answered several phone calls that day from [Petitioner] and heard similar threats. During one of the conversations, [Petitioner] said that next time Sohl saw him, he would be in a white Suburban. That night, a white Suburban drove in front of their home and flashed its lights into the window."

   Modesto Police Officer Josiah Davenport responded to a 10:05 a.m. report of "shots fired" at the apartment. Mims and Barry separately gave the officer virtually identical statements. The officer noted the front door appeared to have been kicked in from the outside and an outside apartment complex wall had sustained a gunshot blast.

   At trial during cross-examination of Officer Davenport, defense counsel asked about Castro reporting that [Petitioner] had driven away in a white pickup. The following dialogue then occurred:

   Q. . . . And Officer, you also did a-you also learned that [Petitioner] did not have a vehicle, did not own a vehicle, is that correct?

   A. In talking to the parole department-

   [DEFENSE]: No, objection, move to strike.

   THE COURT: The answer's stricken, the jury's ordered to disregard whether [Petitioner's] on parole or not, it's not in evidence.

   After Officer Davenport concluded his testimony, defense counsel moved for a mistrial on the grounds that his parole status might prejudice the jury against him and that a curative instruction would not remedy the statement because "once the bell is run you can't unring it." The prosecution responded that the jury had only heard that the officer contacted the parole department and discovered [Petitioner] did not have or own a car. The trial court denied the motion, reasoning:

> Well, I'm satisfied that by striking it immediately and by admonishing the jury, the jury should follow the Court's direction and not let it enter into their deliberations. And if you want, I'll give a further instruction of-formally, when I instruct the jury, and then if the defendant is found guilty, you can question the jury or decide-make a motion for a new trial if in fact they did use that information in making the verdict.

3

> But I'm satisfied that there's no direct evidence before this jury the defendant is on parole, they merely found out before the jury that parole was contacted. I think a reasonable assumption is that he was on parole, but that would definitely be assumption and definitely not evidence. But in any event, it was stricken and the jury admonished, so I'm satisfied that they would do their duty as a trial juror. So Court's denying the motion, but obviously you have an issue on appeal.

(Lodged Doc. No. 4.)

## DISCUSSION

A.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Stanislaus County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.   Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with

respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000).  "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted).  "Rather, that application must be objectively unreasonable."  Id. (citations omitted).

While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction. Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day, 110 F.3d 1380, 1388 (9th Cir. 1997).

C.      Denial of Motion for Mistrial Regarding Reference to Parole Status

Petitioner contends that the trial court violated his right to due process under the Sixth and Fourteenth Amendments by denying his motion for a mistrial because of the reference to Petitioner's parole status during trial.

Petitioner raised this claim on direct appeal to the California Court of Appeal, Fifth

Appellate District and California Supreme Court.[4] Because the California Supreme Court's opinion is summary in nature, however, this Court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (establishing, on habeas review, "look through" presumption that higher court agrees with lower court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n. 7 (9th Cir.2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was contrary to or an unreasonable application of federal law under § 2254(d)(1)).

In denying Petitioner's claim on direct appeal, the Court of Appeal held, in relevant part as follows:

> Officer Davenport did not directly indicate that [Petitioner] was on parole in mentioning he had talked to the parole department. There is also no suggestion the disclosure was intentionally calculated to prejudice [Petitioner]. Moreover, unlike in *Bolden* and as recommended in *Valdez*, the trial court immediately struck the testimony and instructed the jury to disregard the statement. Further, at the beginning of trial, the trial court instructed the jury not to consider for any purpose any evidence that was stricken by the court. Given the brevity of Officer Davenport's remark, the trial court's jury instructions and immediate admonition, and the overwhelming abundance of evidence against [Petitioner], we conclude [Petitioner] was not incurably prejudiced by the officer's statement regarding parole.

(Lodged Doc. No. 4, Opinion, at 5-6.)

The state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. The factual circumstances of this case are akin to the circumstances in the case of Mancuso v. Olivarez, 292 F.3d 939, 952 (9th Cir. 2002). There, at trial a witness disclosed, in contravene to the trial court's admonition, the fact that a parole search of the defendant's apartment had been conducted. Mancuso, 292 F.3d at 949. The court denied defense's request for a mistrial, because the jury was specifically

---

[4] In addition, Petitioner raised the claim in his state habeas corpus petitions submitted to the California Court of Appeal and California Supreme Court. Both courts summarily denied the petitions without comment. (Lodged Doc. Nos. 8, 10.)

1  instructed to disregard the witnesses's statement.  Id. at 951.

2  In determining the extent that the disclosure of extrinsic evidence may have substantially
3  and injuriously affected the verdict, the Ninth Circuit considered: (1) "whether the prejudicial
4  statement was ambiguously phrased"; (2) "whether the extraneous information was otherwise
5  admissible or merely cumulative of other evidence adduced at trial"; (3) "whether a curative
6  instruction was given or some other step taken to ameliorate the prejudice"; (4) "the trial
7  context"; and (5) "whether the statement was insufficiently prejudicial given the issues and
8  evidence in the case."  Mancuso, 292 F.3d at 952.  After careful consideration of these factors,
9  the Ninth Circuit concluded that despite the statement being neither ambiguous nor cumulative,
10 the trial court's careful admonition to the jury to ignore the statement sufficiently cured and
11 ameliorated any resulting prejudice.  Id.

12 Here, the statement by Officer Davenport that he discovered Petitioner did not own a
13 vehicle through the parole department is was not specific statement that Petitioner was, in fact,
14 on parole.  (RT 138.)  Although the fact that Petitioner was on parole at the time of the incident
15 was not admissible, it is apparent that the disclosure was not intentionally calculated to prejudice
16 Petitioner, as the statement was not repeated when the same question was restated.   Immediately
17 following the officer's statement, the trial court struck the testimony and instructed the jury to
18 disregard the statement.  (Id.)  In addition, at the beginning of the trial, the jury was instructed to
19 not consider for any purposes any evidence that was stricken by the court.  (CT 88; RT 37.)

20 The statement considered in the context of the entire trial and in light of the evidence,
21 does not support a finding that the statement had a "substantial and injurious effect or influence
22 in determining the jury's verdict.  Fry v. Pliler, __ U.S. __; 127 S.Ct. 2321, 2328 (2007); Brecht
23 v. Abrahamson, 507 U.S. at 637.  Petitioner's defense at trial was that he was in Sacramento at
24 the time of the incident.  (RT 271-277.)  However, both Barry and Mims, clearly identified
25 Petitioner as the perpetrator.  (RT 52-56, 87-91.)  After being separated by police, both Mims and
26 Barry gave consistent statements regarding the incident immediately after it occurred.  (RT 122-
27 123.)  Consistent with and in further corroboration of both of their statements, police found
28 wrapping paper and damage to the apartment door.  (RT 122-131.)  In addition, a neighboring

1  resident of the apartment complex, testified that after he heard a gun shot, he observed an
2  African-American man running away from the apartment with a shotgun partially covered in
3  wrapping paper. (RT 72-75.) Barry's mother, Sohl, and her boyfriend, White, identified
4  Petitioner as the person who called their home on numerous occasions following the incident
5  making threats against their safety. (RT 150-158, 180-184.) Although Petitioner did not testify
6  in support of his defense, he presented testimony of Monique Williams, who purported to be his
7  alibi witness. However, Williams, undisputably, did not see Petitioner between 7:45 a.m. and
8  5:00 p.m. on the day of the incident. (RT 201-203.) In addition, Williams never told authorities
9  that Petitioner was at her apartment on that day. (RT 235.) Thus, given the strong and
10 overwhelming evidence of Petitioner's guilty, it simply cannot be said, after considering in the
11 context of the entire trial, that the officer's statement had a "substantial and injurious effect or
12 influence" on the jury's verdict. Thus, even if there was constitutional error in not declaring a
13 mistrial based on such statement, such error was harmless in this instance. See Fry, 127 S.Ct. at
14 2328; Brecht, 507 U.S. at 637.

15 D.    Ineffective Assistance of Appellate Counsel

16     Petitioner contends that appellate counsel was ineffective because Petitioner's first
17 federal petition for writ of habeas corpus filed in this Court was dismissed for failure to exhaust
18 the state court remedies. (Petition, at 5.)

19     This claim was presented in his state habeas corpus petitions filed in the California Court
20 of Appeal and California Supreme Court. Both petitions were summarily denied. Under the
21 Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may not grant
22 relief to a state habeas petitioner unless the state courts' failure to grant relief was "contrary to, or
23 involved an unreasonable application of, clearly established Federal law, as determined by the
24 Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). In a habeas action, the federal
25 court reviews the last reasoned decision in the state court system, here the Fifth DCA's
26 determination that Petitioner's claim was "moot." Riggs v. Fairman, 399 F.3d 1179, 1182 (9th
27 Cir.2005), citing Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir.2004). AEDPA's strict
28 standard of review is relaxed when the state court reaches a decision on the merits but provides

no reasoning to support its conclusion. Under such circumstances, the federal court must "independently review the record to determine whether the state court clearly erred in its application of Supreme Court law." Brazzel v. Washington, 491 F.3d 976, 981 (9th Cir.2007), *quoting* Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir.2002); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir.2000) ("Federal habeas review is not de novo when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law.").

### 1. Factual Background

Petitioner initially filed a petition for writ of habeas corpus in this Court on March 13, 2006, in case number 1:06-CV-00279 OWW LJO HC. Petitioner raised the single claim that "the trial court violated Petitioner's right to due process under the 6th and 14th Amendment of the United States Constitution" by denying his motion for mistrial based on his assertion that a reference to Petitioner's parole status during trial was prejudicial.[5] (See Petition in 1:06-CV-00279 OWW LJO HC.) Although Petitioner presented this claim to the California Supreme Court on direct appeal, he did not present the claim to the California Court of Appeal for review. (Lodged Doc. No. 5.) Accordingly on August 28, 2006, the Court dismissed the petition, without prejudice, finding that Petitioner had only presented the federal basis for his claim to the California Supreme Court on discretionary review in a petition for review, and therefore had not sufficiently exhausted the claim. (Court Docs. 14, 16;1:06-CV-00279 OWW LJO HC.)

Then on September 13, 2006, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, Fifth Appellate District. (Lodged Doc. No. 7.) The petition was denied on September, 21, 2006, without comment. (Lodged Doc. No. 8.)

On October 11, 2006, Petitioner filed a petitioner for writ of habeas corpus in the California Supreme Court. (Lodged Doc. No. 9.) The petition was dismissed without comment on April 11, 2007. (Lodged Doc. No. 10.) Thereafter, Petitioner filed the instant petition for writ

---

[5] The Court takes judicial notice of the pleadings and filings in case number 1:06-CV-00279 OWW LJO HC. A Court may take judicial notice of court records. See, MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th cir. 1980).

of habeas corpus on April 30, 2007.  (Court Doc. 1.)  In this petition, it appears that Petitioner is claiming that appellate counsel was ineffective for failing to assert his claim on direct appeal to the California Court of Appeal, which resulted in the dismissal of his first federal petition for writ of habeas corpus filed in case number 1:06-CV-00279 OWW LJO HC.

2. Analysis

Effective assistance of appellate counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985).  Claims of ineffective assistance of appellate counsel are reviewed according to Strickland 's two-pronged test. Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir.1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986); See, also, Penson v. Ohio, 488 U.S. 75, 109 S.Ct. 346, 353-54 (1988) (holding that where a defendant has been actually or constructively denied the assistance of appellate counsel altogether, the Strickland standard does not apply and prejudice is presumed; the implication is that Strickland does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things.  First, he must establish that appellate counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional norms. Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 2064 (1984).  Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, she would have prevailed on appeal. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Id. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir.1998). The presumption of reasonableness is even stronger for appellate counsel because he has wider discretion than trial counsel in weeding out weaker issues; doing so is widely recognized as one of the hallmarks of effective appellate assistance. Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir.1989).  Appealing every arguable issue would do disservice to the Petitioner because it would draw an appellate judge's attention away from stronger issues and reduce appellate counsel's credibility before the appellate court. Id.  Appellate counsel has no constitutional duty to raise every nonfrivolous issue requested by petitioner. Id at 1434 n10

1  (*citing* Jones v. Barnes, 463 U.S. 745, 751-54, 103 S.Ct. 3308 (1983)).

2  Petitioner's claim fails on the merits.  First, as discussed above under Section C, because there is no merit to Petitioner's claim that the trial court erred in denying his motion for a retrial, appellate counsel could not and was not ineffective for failing to raise such a meritless claims. Moreover, even if counsel was ineffective, Petitioner has not and cannot demonstrate any resulting prejudice, because after the first federal petition for writ of habeas corpus was dismissed, Petitioner returned to state court and exhausted the very claim currently being addressed.  As such, Petitioner cannot demonstrate that he was prejudiced in any way as his claim was exhausted and reviewed by way of § 2254.  Accordingly, the state court's decision did result in a clear error of application of the federal law.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus is DENIED; and,

2. The Clerk of Court is directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **March 31, 2008**            /s/ **Dennis L. Beck**
                                       UNITED STATES MAGISTRATE JUDGE